When you're ready. Good morning, Your Honor. Chad Bowers. I represent the defendant and appellant Luis Gonzalez-Largo. I'd ask to reserve a couple minutes in rebuttal. Unless the court specifically asks otherwise, I want to start with sort of the unusual procedural history here with respect to having a joint bench and jury trial. It's not a common case. We can't find any other appellate cases where this has happened. You have the fundamental right of someone to a jury trial, in this instance, abutting to what is not a fundamental right, but outreach of the rule of criminal procedure, which is the bench trial. Having said that, in this instance, we advocate that shouldn't have been done together, but it's not simply just because, oh, you have a bench trial and, oh, you have a jury trial. If you look at Zafiro, which is a United States Supreme Court case that addressed antagonistic offenses, there were some points that I think are fundamental. The notion of severance deals with the jury being able to render a decision as to the defendant without confusion. And Zafiro comments that you don't have to automatically sever a trial because there's antagonistic offenses necessarily, but you do need to sever trials when there's a serious risk that a joint trial would compromise a specific trial right. And it points to two things that I think are relevant in this instance, which is when the jury might consider evidence against the defendant that he wouldn't be present to if that defendant weren't tried with his co-defendant, or whether evidence of the co-defendant's wrongdoing would be potentially erroneously used by the jury to find guilt. I mean, you're dealing at a general level, and I understand that. But the trial court instructed the jury generally that they were only to consider evidence that's specifically related to your client. Well, and I'm glad you raised that. And at no point in the record, at least that I'm aware of, did the judge refuse to issue a specific limiting instruction on something that the defense counsel thought might have created confusion. Right. Is that incorrect? Well, I think the flip side of that is at no point did defense counsel necessarily request limiting instructions on an ongoing basis. In other words, yes, I agree with you. At the beginning of the trial, the judge says, okay, go ahead and only consider the evidence against Kobar for his guilt and against Largo for his guilt. We then proceed to have a fairly lengthy trial, only a relatively small portion. I mean, granted, there's some, but much of the evidence in that trial that the jury sits through doesn't have anything to do with this particular conspiracy. And along the way, there is not a lot of jury disregard of this. This evidence relates to Kobar. But it wasn't requested either. I'm stuck with the hand that I've been dealt, Your Honor. And, you know, I'm not going to pretend to you that that didn't happen. But here's – this is my concern, and I'm glad we're on the same page. I think the district court's a fair and a very good judge, and normally this would not happen. I think what happened here is there's a certain, you know, maybe lack of diligence paid attention to the fact that there's a suspense trial going on that has all this evidence against him, while at the same time the jury trial is going on against somebody else. So I will agree with you that there was not ever a time where a defense counsel said, Your Honor, this evidence should not be used against this client. And the judge said, no, I'm not going to give that instruction. What's the standard we're supposed to look at here, counsel? Obviously, you've got two different trials. It's unusual. It's very unusual. Very unusual. But the reality is they went forward. Are we supposed to look at this on an abuse of discretion standard? Yes. So it's abuse of discretion. So the trial court has a fair amount of discretion, a sense of what's fair, and has to depend to a large degree on what defense counsel or, for that matter, the government may say in objection to the way it's proceeding. Yes. I will give that I think this is an abuse of discretion. I will give that judge has sufficient latitude. I will give that it's very important that that or any other district court judge be able to run his courtroom as he sees fit, provided it doesn't infringe on my client's right in a way to expeditiously move along cases. Having said that, and this is why this little bit of a procedural wrinkle we don't see much is very important, he does not have to. He has to give my client a jury trial. He does not have to do that for Mr. Kobar. Right. Okay? So when he has the choice of having this seven- or eight-day trial where confusion is going to be an issue or potentially limiting is going to be an issue, what he can say is, no, I'm sorry, Mr. Kobar, I'm not going to try you. You're going to be tried in front of this jury. And I think had he done that, there would not have been these collateral issues. Kobar's counsel wouldn't be objecting to things on behalf of my client. But is there any case law you can cite to any standard? I mean, you would agree that abuse of discretion is the standard we're talking about here. That's correct. And these kinds of issues, albeit not in a mixed medium, come up in conspiracy trials all the time. Correct. One person thinks that more emphasis is being placed on this or that is unfair. We deal with it all the time. Right. And I guess what I'm struggling with here is the district court, at least from my review of the record, seemed to be bent over backwards to try to be fair on this thing. Admittedly, it was unusual. But the defense counsel didn't object. It seems like we're kind of going back now and saying, you know, in a perfect world, I'd really wish it had been done differently. But if he didn't abuse his discretion, how do you have any relief from that? Well, I mean, I think I have to argue that he does abuse his discretion. And I think part of what hey. So you are saying. Oh, I have to. Yes. No, I mean, that's the standard I'm under, that in this instance it was an abuse of discretion to have these two trials together. And I will ask you, in case I didn't do so clearly before, do you have any case law from any circuit, or for that matter even a district court, that finds that doing what was allegedly done here was an abuse of discretion? No. This is what I understand. This is the world, as I understand it, of criminal law regarding a bench trial and a jury trial happening at the same time. My only understanding is that there's a Sixth Circuit case of Young where there's a woman and another person tried together and that the person who has a bench trial appeals her right or appeals her conviction. And they say, well, this is a little silly. You were the one who had the bench trial. Certainly the court was able to sift this evidence. And it's interesting you say that, but even having said that, and I don't want to read or I don't like to do that, but they do say that if the – I guess what I'll say is that court says if she had been tried by a jury and the situation was reversed, there's a possibility of confusion. And so we come back to this confusion. And you sort this out every day. You all the time see people come up and say co-conspirators being tried together, there's issues of compartmentalization and there's issues regarding antagonistic defenses and there's issues about the amount of evidence. What I think that is a little bit different procedurally in this instance that is – and I can talk about why I think all those things weigh in our favor, but I don't know that that's actually the issue. What I think that you don't have in this instance or that you have in this instance that you don't generally see when we're talking about these other topics in conspiracy cases is you have this other defense counsel there engaging in all sorts of conduct sort of with free reign. I mean, why not? The jury's not going to punish me. I can do whatever I want. This is just the judge. Now, should maybe my trial defense counsel have been more vocal about that? Okay. Okay. But the fact that he didn't do it perfectly in hindsight, I don't think, negates the problem that's inherent. Did the trial judge in any way control the counsel for the defendant being tried by the court? Well, I mean, I think he controlled his courtroom. I'm not saying that he was run over or anything. But I don't, and again, this is, I think, kind of the fundamental problem with mixing these two together is I don't think he controlled her in the same way that he would have. Is the abuse of discretion that you're relying on, the fact that one case was being tried before the judge and the other before the jury, or is it that they should just should have been completely separately tried? Once you, you as a judge, may have the ability to try those cases together. One is a bench trial, one is a jury trial. I don't think you're precluded from doing that. But once you make that decision, okay, I think you have a heightened responsibility to assure that the rights of the person involved in the jury trial are not offended by what happens with the bench trial. And I think what happened in this case, and I think what the abuse of discretion of in this case, is the exact opposite happened. The person being given the bench trial was afforded their full rights to move forward however they pleased, including objecting to my client's pieces of evidence or things that are going on, cross-examining witnesses that have negative inferences on my client. I think a judge is allowed to do that. I think it might not be wise for a judge to do that because for this exact reason. This creates a problem. And it's very, obviously it's very unusual. I'm aware of no other case of this one Sixth Circuit case in the country where this happens. Okay. And now I want to make sure I understand that you give me in as much specificity as you can, what did, having conceded that the district judge could join these two things, and now saying, but having done that, the judge has to be particularly careful not to hurt your client. Correct. What specific things did the district judge do incorrectly that improperly hurt your client? I think the judge had an obligation, aside from the lack of my defense counsel's objection, to instruct the jury more specifically and more frequently as the trial went on about which pieces of evidence related to him and which didn't. I think that's something that the judge should have done. But you conceded. I just conceded. I understand. The trial counsel didn't ask him. I understand. Okay. And in a normal trial, that's okay. I mean, it's not okay. Trial counsel didn't ask him. But once you mix these two, once you have this. No, I got that point. Okay. Okay. What else? All right. What I would also suggest is he should not allow the other attorney to make objections to my client's things. He should have exercised, he should have admonished and exercised more control over the attorney that was having a bench trial. Again, I understand. Did your client's lawyer say anything? No. For the most part, that's correct, Your Honor. I'm not going to argue that. I'm saying, but we're saying the same thing, two sides to the same coin. Okay. I will point out when we talk about antagonistic offenses, we have this co-defendant asking a juror or asking witnesses about an entrapment offense, you know, essentially conceding I did it, but here's why. Well, my client's pursuing a different route. That doesn't, I guess, with respect to your specific question, Your Honor, that means he should have been more specific about his warnings and his limiting instructions when those things happen. He should have been more diligent in precluding certain things from taking place in front of the jury. For example, if there needs to be a cross-examination about entrapment that's antagonistic to my client's position, maybe that needs to be conducted outside the presence of the jury. I think some of these witnesses should have been split up. Some of these people talked at length about multiple conspiracies and general drug trafficking patterns. It was sort of an odd trial, too. I don't know if you picked it up, but there were no drugs involved. All this stuff happened in Panama. Well, no actual drugs were covered. That's correct. Yeah, I mean, no one ever saw any drugs. This went on for months. There's all these different players involved. I think the judge had an obligation, if he's going to try the case this way, to do a better job of saying to the government, this portion of this witness's testimony will be handled exclusive of the jury, this portion will be with the jury. I don't think that was done. I concede that my defense attorney at trial could have done a better job requesting that of the judge, and that the objection to the notion of the severance maybe should have been ongoing, but I think that was a problem. And I believe you said that you acknowledge that there is no case law that requires that. No. You'd be asking us to create this case law, basically. Well, and I guess what I'm saying is I don't know that I'm asking you to create case law. There is no case law anywhere in the country that I'm aware of, and I don't know that I'm asking that your decision says you can't try a bench trial with a jury trial. I think what I'm asking is that your decision says if you elect, in the interest of judicial economy, to try a bench trial with a jury trial, you need to be mindful of all these other problems that go along with general severance issues. You need to be particularly mindful of these things, because unlike other cases, I mean, quite trying to be candid and give my defense attorney at the district court level the benefit of the doubt, this is an unusual situation for him. And some attorneys' response might be, object, object, object constantly. I don't know. And other people might say, well, I'm not really sure how often I have to object in what I do, and I have this other attorney just running, you know, sort of wild in the courtroom without any consequences. Why don't we hear from the government, and you've saved a little time. Thank you very much, Your Honor. May it please the Court. My name is Dan Goodman, representing the Appalachian United States of America. The district court did not abuse its discretion when it declined to sever Gonzalez's case from that of Cobar. While the joint bench jury trial was rather unusual, Gonzalez has pointed to no way in which the joint trial compromised his rights. Surely the joint trial was not so manifestly prejudicial as to require the district court to exercise its discretion by granting a severance. Under Zafiro, severance is required only if there is a serious risk that a joint judgment about guilt or innocence, and that was not the case here. The district court explained to the jury that it should consider the evidence only as it related to Gonzalez. Although some of the evidence related primarily to co-defendant Cobar, that is true of virtually any joint trial. Particularly in a conspiracy case, there is a presumption that the co-defendants will be tried together. And Gonzalez's claim of antagonistic defenses does not rebut that presumption. Gonzalez has not shown that his defense was irreconcilable with Cobar's entrapment defense. In theory, Cobar could have been entrapped into committing a crime, while Gonzalez could have had nothing to do with the crime. This is not a classic case of antagonistic defenses in which there are two defendants who claim that only the other one committed the crime. Cobar's counsel did not try to implicate Gonzalez as the sole guilty defendant in the cocaine importation scheme. In any event, having dual fact-finders makes the chance of prejudice from supposedly antagonistic defenses even smaller. The jury was not faced with the problem of choosing between Cobar's defense and Gonzalez's defense. The jury didn't even hear Cobar's closing argument, in which Cobar's counsel argued entrapment to the court. And the district court instructed the jury that the case against Cobar had been disposed of and you must base your verdict solely on the evidence against the remaining defendant, Gonzalez. The district court did not indicate how the case against Cobar had been disposed. Meanwhile, Gonzalez's counsel used the fact that there was more evidence against Cobar to Gonzalez's benefit. Gonzalez's counsel argued to the jury that while it might believe that Cobar conspired to import drugs, the evidence was insufficient to convict Gonzalez of that crime. Gonzalez thus suffered no prejudice from being tried jointly with Cobar. And the district court did not abuse its discretion in denying Gonzalez's motion to sever. That really covers what I have to say about severance. If the Court has questions about the remaining issues, I will be glad to entertain them. I do have a question about the Batson issue. It wasn't raised in oral argument, but it's on the table. As I understand it, what happens is when we get to the alternate jurors, there's an objection to Juror Brown, the sole black person in the veneer. We'll assume that she's the sole black person. We don't really know the basis for that statement, but that's sort of the assumption that's been preceded upon on appeal. Do you have any objection to that assumption? Well, I just note that we can assume it arguendo, but we don't really have a finding that that's not true. No, but we don't have a finding either that it was true. We don't really have a finding with that respect. So we'll assume it arguendo. Let's assume it arguendo. Also, let's assume maybe more than arguendo that there's a prima facie case because the district judge is asking for what's the government's rationale. And I understand we've got problems because we have this sort of odd recapitulation of the reasoning because the recording system broke down. We have an objection to Juror Brown because Juror Brown had children. That's the rationale. Correct. On the second point, that is the rationale. That is the rationale. Yet we have with the jurors who are actually seated, I gather we have a statement uncontradicted that there are three of the seated jurors who have children. That strikes me then that the rationale given for striking Juror Brown is nonsense. Let me just interrupt so I can be sure I understand your answer to Judge Fletcher. My understanding was that Juror Brown had no children, not that she had children. Is that correct? Oh, I'm sorry. I'm flipping. Yes, it's correct. Juror Brown had no children. I'm sorry. Yeah, yeah. Okay. Thank you for the correction. Yeah, yeah. Twelve seated jurors had no children. Getting back to the first prong, what you said, Judge Fletcher, I've seen many a case where the judge immediately turns to counsel without making a finding one way or the other about whether a prima facie case has been made. I will not concede that a prima facie case here was made under United States v. Vasquez-Lopez. One juror of a particular race without more does not constitute a prima facie case, but I'm willing to go on and discuss the second and third prongs. Right, right. So why am I not to think that this is a nonsense rationale? Now I'm going to get it right. Juror Brown has no children. And, of course, she's an alternate. Right. And actual jurors, we've got three out of them who have no children as to whom there's been no objection. So why am I to believe that all of a sudden the government is concerned about jurors without children? Well, for one thing, and, again, this is unfortunately a reflection of the lack of a record, we don't know, for all we know, the United States used its six peremptories for regular jurors to strike other childless potential jurors. But with 12 jurors and only six peremptories, it couldn't strike everybody. Three out of 12. But if that were true, I would expect that in the conversation that we do have, that we would have had some statement to that effect, and we have none. We're forced to guess, I agree. Right, we are forced to guess. The other thing, of course, is that there's no indication that children versus childlessness or childlessness is the sole criterion that the government is using for exercising its peremptories. For example, the prosecutor could well prefer a retired person who worked in law enforcement but who had no children to a- But what did the prosecutor say was the reason? The prosecutor said that among the four potential alternates, the reason that Juror Brown was struck was because she had no children. Now, but I'm just saying that there could be other reasons if you're comparing the four alternates. But what if the prosecution doesn't express them and doesn't help us with it? That is correct, although you can-we're reviewing, of course, for clear error, and I think this judge, this district judge- Why are we reviewing for clear error? Well, that is the standard under Batson. Oh, I see, not plain error, clear error. Clear error, correct. My mistake, yeah, yeah. The district judge was in the best position to assess Gonzalez's Batson challenge, and he obviously took that challenge very seriously because the district court did say on the record that if it had thought that the government were engaging in discrimination during jury selection, it would have sustained the defendant's Batson challenge, but instead the district court overruled the challenge, and that was not clear error. Additionally, we have the fact that this was a potential alternate juror who would have never sat because no alternate juror sat, and we have found no case, including the Chinchilla case that the defendant cites in his reply brief, we have found no case that involved the use of a peremptory only on an alternate juror who didn't sit to be used to sustain a Batson challenge. The record in this case does not support a novel application of Batson to a potential alternate juror when no alternate jurors ever deliberated. We would say that any error in the striking of alternate juror Brown in this case was harmless as to Gonzalez. Now, speaking only for myself, if anything is going to save you, it's going to be that. And this is, obviously, you weren't the trial attorney. I don't know whether you know the trial attorney and so on. Batson problems, I mean, they're always and they're everywhere. I just have to say I just don't believe that rationale, and if you have any opportunity to speak with that attorney who actually made the peremptory and who used that as the rationale after having allowed onto the real jury three people without children, I wouldn't mind if you had a conversation with that attorney. I'm not accusing the attorney of racism. This is different. I'm accusing the attorney of having advanced a nonsensical rationale. And that's different from actually having had a race basis, but that's how we judge these cases. I would not call it a nonsensical rationale, Your Honor, because this court in Turner versus Marshall, which was cited in the reply brief of Gonzalez, said that a potential juror with two small children was a classic prosecution. I understand that perfectly. And had there not been three people on the actual jury with no children, I would accept the rationale. Well, if we had a fully developed record where the exercises of the peremptories in each case were explained, including the peremptories for the 12 jurors, we might see that there were even better reasons for using the other six peremptories. Well, I'm sympathetic to the position in which both sides find themselves without the full record, and this is now speaking only for myself, if a Batson error to me is harmless. What are we to make in this case of the fact that the record is not complete with regard to the Batson issue? Does it have any impact at all other than we don't have the benefit of the record and the rationale as to the selection of the jury that was seated? Well, without the full record, it certainly makes it hard to say that the district judge who was in the best position to assess the Batson challenge committed clear error. I know that Gonzalez tried to ameliorate the problem when he realized that there was no transcription of the exercise of peremptories to go over the ground that he thought was necessary rather than objecting and saying, we have to do this over. But on the record that is presented before us, there really is no basis for saying that the district judge was in the best position to assess the jury selection process. So here, that's what happened, I gather, where the district judge allowed both parties to state their piece and then indicated that he found no. If he thought there was discrimination, he would have acted on it, but he found none. Correct, Your Honor. So we would ask that the judgment of the district court be affirmed. Thank you. Thank you. Mr. Bowers. I'll take just a moment. Your Honor commented with respect to Batson. If the prosecutor doesn't express it at the time, that doesn't help us. We know there's a problem with the error or with the record when this record is being made after the fact, and the prosecutor doesn't help us. I will submit I don't know that there's such thing as a harmless Batson error, and I don't mean that flippantly. The government submitted a 28-J letter with respect to the United States v. Lindsay that went into some analysis regarding certain types of errors that are automatic and other that automatically require reversal. That case, just so we're clear, applies to the limited circumstance of when there's a good-faith erroneous denial of a preemptory challenge. If there's a Batson problem here, I don't know that there's a I don't know that there's such a thing as a good-faith Batson problem. I mean, I understand we're not necessarily accusing this prosecutor of being racist, but if there's a problem with Batson, there's a problem with Batson. I understand the court's inclination is who cares if that juror didn't sit, but I think there's a notion surrounding Batson that if that's a problem, that's a problem. Fair argument. So with respect to that point, I will submit it, and I think we've hammered the other point as well. So thank you for your time. Okay. Thank both sides for good arguments. The United States v. Gonzales-Largo submitted for decision. One last case on the argument calendar. United States v. Ferguson.
judges: Hug, Fletcher W. , Smith M.